**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **CHRISTINE DORRIBO** | **CIVIL ACTION NO. 25-262** |
| **VERSUS** | **JUDGE EDWARDS** |
| **JAMES GENOVESE, ET AL.** | **MAG. JUDGE PEREZ-MONTES** |

# MEMORANDUM ORDER

Before the Court are competing motions for summary judgment. The first is a Motion for Partial Summary Judgment on Liability (ECF No. 31), filed by the plaintiff, Christine Dorribo ("Dorribo"). The second is a Motion for Summary Judgment (ECF No. 40), filed by the defendants, the Board of Supervisors for the University of Louisiana System, and James T. Genovese, in his official capacity as President of Northwestern State University (together, "the University"). Each motion is fully briefed. *See* ECF Nos. 44, 48, 51, and 52. The Court further held a hearing on the motions. *See* ECF No. 55.

After consideration of the parties' memoranda and the argument at the hearing, the record, and the applicable law, Dorribo's Motion (ECF No. 31) is **DENIED**; the University's Motion (ECF No. 40) is **GRANTED**.

## I. BACKGROUND

This case is about a work-from-home librarian. Dorribo began working at the University in August 2006. *See* ECF No. 1 at 2. She was a librarian. *Id.* At the onset of the COVID-19 pandemic, the University sent all library employees, including Dorribo, home to telework. *See id.* at 3. She never returned to in-person work. *Id.*

Dorribo contends that she cannot return to in-person work because she is disabled. *See* ECF No. 31-1 at 5–6. More specifically, she suffers from obsessive-compulsive disorder, which makes working in the presence of other people unbearable at times. *See id.* at 8–9. The pandemic "significant[ly] exacerbated" her symptoms. *See id.* So, when the University sought to have its employees return in person, Dorribo sought a teleworking accommodation. *Id.* at 9. The University allowed her to telework under a modified job description. *See id.* But in 2022, the University again asked Dorribo to return in-person. *Id.* at 11. Unable to reach a mutually suitable working arrangement, the University terminated Dorribo on December 4, 2024. *See id.* at 12–13 (chart detailing contact and termination). So, she sued. *See* ECF No. 1.

Dorribo alleges that the University violated the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* (the "ADA"), Section 504 of the Rehabilitation Act**,** 29 U.S.C. § 794, *et seq.* (the "RA"), and the Louisiana Employment Discrimination Law, La. R.S. 23:322, *et seq.* (the "LEDL"), when it terminated her rather than accommodating her continued teleworking arrangement. *See* ECF No. 1 at 10–14. According to Dorribo, she satisfactorily performed her duties as defined in the modified job description, and the University had no reason to terminate her. *See* ECF No. 31-1 at 12. Furthermore, Dorribo alleges that the University acted unilaterally when it required her to return to in-person work, and did not engage in the "interactive process" demanded by the ADA. *See id.* She seeks summary judgment on liability on these bases. *See generally id.*

The University also moves for summary judgment. *See* ECF No. 40. The University argues that Dorribo is not qualified to be a librarian if she must telework entirely. *See* ECF No. 40-1 at 8–21. The University contends that allowing her to telework full time would essentially be giving Dorribo a fake job. *See id*. at 24 –27. But not just a zero-sum fake job, the University avers that having to "invent things" for Dorribo to do remotely caused undue hardship on Dorribo's supervisor. *See* ECF No. 52-4 at 25. According to the University, once her supervisor exhausted every possible remote task, Dorribo watched the same training videos for months. *See id*. at 27. Citing Dorribo's doctor, who says she cannot leave the house to work, the University asserts that it cannot provide an accommodation that would make the librarian position possible. *Id.* at 27–29. More below.

## II. LEGAL STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016). "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Id.* (internal quotations omitted). In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.,* 719 F.3d 424, 434 (5th Cir. 2013) (citation omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (cleaned up). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

## III. ANALYSIS

We begin with Dorribo's principal claim: that the University failed to accommodate her disability contrary to the ADA. To prevail in a failure-to-accommodate claim, a plaintiff must prove: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). "It is the plaintiff's burden to show that [s]he is qualified under the ADA." *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2017). A plaintiff can show that she is qualified if she shows "(1) [s]he could perform the essential functions of the job in spite of [her] disability or (2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." *Id.* at 417 (citation omitted).

If there is no "available reasonable accommodations that would ... enable[ ]" an employee "to perform the essential functions of [her] job," she is not "qualified under the ADA." *Id.* at 419. In determining what constitutes "the essential functions of the job," courts are required to give "consideration ... to the employer's judgment." 42 U.S.C. § 12111(8); *see also Credeur v. La. Through Off. of Att'y Gen.*, 860 F.3d 785, 792 (5th Cir. 2017) (Courts "must give greatest weight to the 'employer's judgment'"). Courts can also consider other factors such as "[t]he amount of time spent performing the function[,] ... the work experience of past incumbents in the job or current incumbents in similar jobs[, and] ... the consequences of not performing the function." *Credeur*, 860 F.3d at 794. Courts should not consider an "employee's personal judgment" about what constitutes the essential functions of the job. *Id.*

Relevant here, "there is general consensus among courts, including ours, that regular work-site attendance is an essential function of most jobs." *Credeur*, 860 F.3d at 793. When "requested by the employee, the reasonableness of telework cannot be presumed." *Ali v. Regan*, 111 F.4th 1264, 1280 (D.C. Cir. 2024). And full-time teleworking "is rarely a reasonable accommodation." *Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 896 (7th Cir. 2003).

Furthermore, the ADA does not require an employer to create a new position for an employee who can no longer perform the essential functions of the original job. *See Smith v. Ameritech*, 129 F.3d 857, 866–67 (6th Cir. 1997); *Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.,* 601 F.3d 674, 680 (7th Cir. 2010) ("An employer need not create a new job or strip a current job of its principal duties to accommodate a disabled employee."). "Nor is there any duty to reassign an employee

to a permanent light duty position." *Id.* (citing *Watson v. Lithonia Lighting,* 304 F.3d 749, 752 (7th Cir. 2002) (Easterbrook, J.)). To hold otherwise would punish an employer who tried to help a struggling employee while they convalesced. *See Watson,* 304 F.3d at 752.

Dorribo simply cannot show that she was qualified for the library associate position. It is the position of Dorribo personally, *see* ECF No. 52-4 at 28 (summarizing record evidence), and her doctor, *see id.* at 10–11, 27 (citing record), that she is unable to work in person at all. The job description under which she was hired required Dorribo to assist patrons, supervise the reference room, shelve materials, work the desk, and instruct. *See* ECF No. 40-21. Dorribo cannot controvert that these tasks are incompatible with full-time telework. Every other librarian works in person. *See* ECF No. 52-4 at 19–23 (citing record). Again, the ADA does not require creating an eviscerated position or one in which every other function of the position must be shouldered by another employee, leaving the accommodated employee only to watch training videos for 83 days. *See Gratzl,* 601 F.3d at 680.

Second, just because the University modified Dorribo's tasks following the pandemic, does not mean that it must extend that arrangement forever or that it forever modified the essential functions of her position. *See Ray v. Columbia Brazoria Indep. Sch. Dist.*, No. 24-20227, 2025 WL 1219191, at *3 (5th Cir. Apr. 28, 2025); *Watson,* 304 F.3d at 752. It also matters not that the previously-extended telework was not predicated merely on the pandemic, but also on the worsening psychiatric disorders of the employee seeking the accommodation. *See Hayes v. GStek, Inc.,* 175 F.4th 603, 606–09 (5th Cir. 2026).

Altogether, the ADA does not require the University to maintain a remote employee with no real work to do remotely—whether or not it initially cut her a break—pandemic-related or not. The record makes clear that the University has no place for a stay-at-home librarian, and Dorribo's quibbles with operative job descriptions, the digital future of library science, and the interactive process do not change this reality. *See generally* ECF No. 51; *compare with* ECF No. 52-4 at 16–17. An employer does not violate the ADA when they fail to engage in the interactive process with an unqualified employee. *Moss v. Harris Cnty. Constable Precinct One,* 851 F.3d 413, 419 n.3 (5th Cir. 2017). Dorribo's failure to accommodate claim under the ADA is thus dismissed. *See Hayes,* 175 F.4th at 606–09. For the same reasons, her RA claim and her LEDL claim also fail. *Frame v. City of Arlington,* 657 F.3d 215 (5th Cir. 2011) (RA); *Johnson v. JP Morgan Chase Bank, N.A.,* 293 F. Supp. 3d 600, 614 (W.D. La. 2018) (LEDL).

"Because the court grants [the University's] summary judgment motion, it follows that [Dorribo's] cross-motion for partial summary judgment fails." *See Rojas v. X Motorsport, Inc.,* No. 16-7283, 2017 WL 2404953, at *4 (N.D. Ill. June 2, 2017), *aff'd,* 710 F. App'x 708 (7th Cir. 2018).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Dorribo's Motion (ECF No. 31) is **DENIED** and the University's Motion (ECF No. 40) is **GRANTED**. This action is hereby **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** this 23rd day of September, 2026.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**